Filed 7/10/25  In re E.R. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re E.R., III. et al., Persons Coming Under the Juvenile Court Law. | B338585 (Los Angeles County Super. Ct. No. 21CCJP03615A–B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. E.R., Jr., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Jean M. Nelson, Judge.  Affirmed in part and dismissed in part.

Paul Couenhoven, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jessica Buckelew, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I.  INTRODUCTION

E.R., Jr. (father) appeals from the juvenile court's order granting the Welfare and Institutions Code section 388[1] petition of the Los Angeles County Department of Children and Family Services (Department) to modify his visitation with his children E.R., III. and H.R. (the children) from unmonitored to monitored.[2]  Father also contends the Department and the court failed to comply with their inquiry duties under the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and related California statutes (§ 224 et seq.).  We affirm the order granting the Department's section 388 petition and dismiss as moot father's ICWA challenge.

---

[1]  Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]  The children's mother, A.S., is not a party to this appeal. Father has another child, A.P., with D.P.  A.P. is not a subject of and D.P. is not a party to this appeal.

2

## II. BACKGROUND

On March 1, 2022, and April 6, 2022, the Department filed first amended section 300 petitions as to E.R., III and H.R., respectively. In counts a-1 and b-1,the amended petitions alleged, as later sustained by the juvenile court, that father's history of engaging in domestic violence with mother and his violation of a restraining order that prevented father from having contact with mother, endangered the children's physical health and safety, and placed the children at risk of serious physical harm, damage, and danger.[3]

At the May 3, 2022, adjudication and disposition hearing, the juvenile court ordered father to complete a domestic violence program for perpetrators; a developmentally appropriate parenting program; individual counseling to address case issues, childhood trauma, and the cycle of domestic violence and its effect on children; and to drug test upon reasonable suspicion of substance abuse. The court granted father monitored visits two to three times a week for two to three hours a visit. Father was ordered to abide by any restraining order in place and he and mother were not to visit the children together.

On March 13, 2024, the juvenile court ordered that father was to have unmonitored visits with the children in a public

---

[3] The b-1 counts alleged that father's conduct constituted a risk of a failure to protect. The a-1 counts did not. The first amended petitions also alleged counts b-2, b-3, and b-4 against mother.

place, two to three times a week for two to three hours a visit. Father was not to involve "another partner"[4] in the visits.

One month later, on April 13, 2024, father was arrested for inflicting corporal injury on a spouse or cohabitant for an assault on D.P. According to the Department's report, D.P. stepped outside of father's home to take a telephone call. When she returned, father accused her of stealing his game controller. Father and D.P. argued. Father struck D.P. in the face, "bust[ing] her lip." D.P. left and walked to the nearest law enforcement office to file a report against father.

The social workers in father's dependency case with A.P. told the social worker in this case that father told his anger management counselor he had "'messed up.'" One of the social workers, however, said father had a different version of the altercation than D.P. Father said he ran into D.P. at a train station on his way to work and she began to harass him. He attempted to "engage" law enforcement officers who were present, but they told him to go to the police station to file a report. When he arrived at the police station,[5] he was informed D.P. had filed a report before him and "because of 'OJ' he was going to get arrested."

The Los Angeles County Sheriff's Department report about the altercation stated D.P. said she was in a dating relationship with father for three years. There had been multiple past domestic violence issues she had reported to law enforcement.

---

[4] Father had a separate dependency case regarding A.P. that concerned domestic violence with D.P.

[5] The Compton Sheriff's Station and not a police station was involved in this incident.

4

She spent the prior night at father's home. Father woke her in the morning and accused her of stealing his "'PS5'" remote control. Father then punched D.P. three times in the face, lacerating her lip, and strangled her for four seconds. D.P. left to go home, but ran into father at the train station. They argued and then walked to the Compton Sheriff's Station.

On April 24, 2024, the Department filed a section 388 petition to change the juvenile court's order granting father unmonitored visitation with the children to monitored visitation. The Department's request was based on the April 13, 2024, domestic violence incident between father and D.P. that led to father's arrest.

On June 4, 2024, the juvenile court held a hearing on the Department's section 388 petition. Counsel for the children joined in the Department's request to modify father's visits to monitored.

The juvenile court granted the Department's section 388 petition. It found father was very good at participating in services and was very focused on his children—he loved and was patient with them. It further found, however, there was a significant change in circumstances in that father's domestic violence with D.P. continued. Father was unable to restrain himself when he was around his romantic partners despite protective orders prohibiting him from interacting with them. Father also had lied when he told the Department he had not been living with D.P. The court was concerned father would allow a partner to attend an unmonitored visit with the children and violence would occur—a "real risk" given father was living with D.P. when he said he was not.

5

While this appeal was pending, on February 5, 2025, the juvenile court conducted a permanency planning hearing and ordered the parents to provide updated contact information for a paternal grandfather E.R., Sr., paternal great-aunt A.D., paternal aunt M.R., maternal great-grandmother C.B., and maternal great-aunt E.A.[6] On May 6, 2025, the court conducted another permanency planning hearing and found that the Department had conducted a reasonable and diligent inquiry as to Native American Ancestry, there was no reason to know that the children were Indian children, and ICWA did not apply. The court then terminated father's parental rights to the children.

## III.  DISCUSSION

A.  *Section 388 Petition*

Father contends the juvenile court abused its discretion when it granted the Department's section 388 petition to modify his visitation with the children from unmonitored to monitored. The court did not err.

### 1.  Legal Principles and Standard of Review

Section 388, subdivision (a)(1) provides in relevant part that "[a]ny parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of

_____

[6]     We grant the Department's request for judicial notice of the court's February 5, 2025, and May 6, 2025, minute orders.

6

court previously made . . . ." "'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' [Citation.]" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.)

We review a juvenile court's ruling on a section 388 petition for abuse of discretion and its factual findings for substantial evidence. (*In re J.M., supra*, 50 Cal.App.5th at p. 846.)

2.      Analysis

The juvenile court did not abuse its discretion in granting the Department's section 388 petition to modify father's visitation with the children from unmonitored to monitored. Despite father's participation in services, he continued his pattern of inflicting violence on his romantic partners. Only one month after the court granted him unmonitored visits with the children, father was unable to restrain himself from violently assaulting D.P. over a matter as insignificant as a supposed stolen game remote control. Father's inability to restrain himself is substantial evidence supporting the court's conclusion that the children were at risk of being exposed to future violent episodes between father and a romantic partner if father's visitation with the children was unmonitored.

B.      *ICWA Compliance*

Father next contends the Department and the juvenile court failed to comply with their duty of continuing inquiry under ICWA. According to father, the record does not reflect that the

7

Department made inquiry of extended family members[7] with whom the Department had contact including paternal grandfather E.R., Sr., maternal grandmother T.A. (or T.S.), paternal aunt M.R., and maternal aunt A.S.[8]

We requested the parties address in letter briefs whether father's challenge to the Department's and the juvenile court's compliance with their ICWA inquiry duties was moot in light of the continuing nature of those duties and the ongoing proceedings in the juvenile court.

Father responded the issue was not moot because the record showed the Department and the juvenile court were not aware their ICWA inquiries were incomplete. If they had been aware of their continuing ICWA inquiry duties, they would have asked the identified relatives with whom they had contact about Indian ancestry during the three-year period after the court's May 3, 2022, jurisdictional finding.

The Department responded the issue was moot because, during the pendency of father's appeal, (1) the juvenile court ordered the Department to prepare a report addressing ICWA

---

[7]     Under ICWA, "extended family member" includes the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent. (25 U.S.C.A. § 1903(2); § 224.1, subd. (c)(1).)

[8]     Father also identifies other relatives with whom the Department had contact and who might have knowledge of the children's Indian ancestry but who are not extended family members under ICWA: maternal great-grandmother C.B., maternal great-aunt E.A., and L.R. who is identified both as a paternal aunt and as a paternal great-aunt.

and other issues, and (2) after reviewing the report the court found the Department had conducted a reasonable and diligent inquiry as to Native American ancestry, there was no reason to know the children were Indian children, and ICWA did not apply. Thus, the Department argues, father has obtained the relief he sought in his appeal and his appeal is moot.

We agree with the Department that father's appeal is moot, but for a reason that differs from those the Department argues. Given the procedural posture of the case at the time father filed his notice of appeal from the juvenile court's section 388 ruling, there necessarily would have been further proceedings at which father's complaints of noncompliance could be raised and addressed by the court. (*In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 638–639; *In re S.H.* (2022) 82 Cal.App.5th 166, 179 ["So long as proceedings are ongoing and all parties recognize the *continuing* duty of ICWA inquiry, both [the Department] and the juvenile court have an adequate opportunity to fulfill those statutory duties"].) Indeed, as we describe above, on February 5, 2025, during the pendency of this appeal, the court ordered the Department to prepare a report addressing ICWA and, on May 6, 2025, after apparently reviewing the report, the court made ICWA findings.[9] Father's challenge to the Department's and the court's compliance with their obligation of continuing inquiry under ICWA therefore is moot.

---

[9] As noted above, at the May 6, 2025, hearing the court ordered father's parental rights to the children terminated. On our own motion, we take judicial notice of father's appeal from the court's May 6, 2025, order terminating his parental rights (case no. B346916). (Evid. Code, § 452, subd. (d)). We express no opinion here about the correctness of the court's ruling on the adequacy of the Department's ICWA inquiry at that hearing.

We have considered the factors bearing on discretionary review of moot questions identified in *In re D.P.* (2023) 14 Cal.5th 266 at pages 286 through 287 and decline to exercise our discretion here.

## IV.    DISPOSITION

The order granting the Department's section 388 petition is affirmed and father's challenge to the Department's and the juvenile court's ICWA compliance is dismissed as moot.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

I concur:

MOOR, J.

10

In re E.R. et al.
B338585

HOFFSTADT, P. J., concurring.

I agree with the majority that the juvenile court did not abuse its discretion in granting the section 388 motion. I also agree with the majority that father's challenge to the court's continuing inquiry under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.; Welf. & Inst. Code, § 224 et seq.) is moot. I disagree only as to *why* it is moot. I do not agree that all challenges under ICWA are moot merely because proceedings are ongoing (under *In re Baby Girl M.* (2022) 83 Cal.App.5th 635, 638–639), but I agree that the ICWA challenge father presents in this appeal is moot because the juvenile court has, after this appeal was filed, made a new ICWA finding based on further information, which renders any relief we grant vis-à-vis the precursor order before us ineffective. (*In re Julien H.* (2016) 3 Cal.App.5th 1084, 1088, fn. 7 [challenge to superseded order on the same topic is moot].)

_____P. J.
HOFFSTADT

11